IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| **ALFRED C. DIZON,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 7:22-cv-00040-O-BP** |
| | § | |
| **VECTRUS SYSTEMS CORPORATION,** | § | |
| | § | |
| **Defendant.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court are the Motion to File for Filing Summary Judgment, which the Court construes as a Motion for Summary Judgment (ECF No. 36), filed by Plaintiff Alfred C. Dizon ("Dizon"); Response in Opposition (ECF No. 41) filed by Defendant Vectrus Systems Corporation ("Vectrus"); Vectrus's Motion for Summary Judgment with Brief and Appendix in Support (ECF Nos. 43-45, respectively); Dizon's Response to Vectrus's Motion (ECF No. 47); and Vectrus's Reply in support of its Motion (ECF No. 49). After considering the pleadings and applicable legal authorities, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **DENY** Dizon's Motion for Summary Judgment (ECF No. 36) and **GRANT** Vectrus's Motion for Summary Judgment (ECF No. 43).

I.      **BACKGROUND**

Vectus is a company headquartered in Colorado Springs, Colorado, that provides services to Sheppard Air Force Base in Wichita Falls, Texas. ECF Nos. 44 at 7, 45 at 5. Vectrus employed Dizon there beginning in October 2018 as an Engineer Tech. ECF Nos. 1 at 1, 44 at 7, 45 at 6. In this role, Dizon was responsible for inspecting projects assigned to him to "ensure the work performed at the projects complied with and conformed to the applicable construction

specifications, drawings, and related documents." ECF No. 45 at 6. Dizon's position required him to interact with customers and other company employees in a "courteous, professional, and effective manner." *Id.*

In March 2019, Dizon received a written warning from his supervisor, Robert Baumer ("Baumer"), regarding unprofessional and aggressive language toward a third-party contractor's employee. *Id.* In June 2019, the Director for the same third-party contractor asked that Vectrus reassign Dizon as the inspector on its projects due to the numerous complaints of Dizon's aggressive and overreaching behavior. *Id.* at 7; ECF Nos. 1 at 3, 44 at 8. Following the request, Baumer met with Dizon a few days later to explain his reassignment on the project. ECF Nos. 44 at 4, 45 at 7. Baumer also conducted a training session with all the Engineer Techs to remind them that it was important to act in a professional manner. ECF Nos. 44 at 8, 45 at 26.

In July, Philip Lujan ("Lujan") replaced Baumer as Dizon's supervisor, and Lujan received notice that Dizon had acted unprofessionally and aggressively towards another Vectrus employee. ECF Nos. 44 at 8-9, 45 at 26. Lujan met with Dizon to discuss his behavior, but after that meeting, the Vectrus employee submitted a complaint against Dizon through the company's ethics website. ECF Nos. 44 at 9, 45 at 30-31. Vectrus conducted an internal investigation into the incident, and Lujan issued a written warning to Dizon on August 3, 2020, specifically stating Vectrus's expectations of him from that time forward. ECF Nos. 44 at 9-10, 45 at 7.

However, in the following months, Lujan learned of "several instances where Mr. Dizon underperformed and failed to comply with the requirements of his job." ECF No. 45 at 8. These included not carrying with him a copy of the project specifications, not knowing where the specifications were located, and failing to ensure that the work completed at the projects that he oversaw was performed in accordance with each project's plans and specifications, all of which

"are a critical and essential component of [Dizon's] job as an Engineer Tech." ECF Nos. 44 at 10, 45 at 35-38. These deficiencies occurred even after Dizon attended a refresher training program regarding proper protocols earlier in the year. ECF No. 45 at 8.

Due to the continued deficiencies in Dizon's job performance, Lujan prepared a final written warning and a sixty-day performance improvement plan ("PIP") in December 2020. *Id*. In order to provide the plan to Dizon, Lujan scheduled a meeting with him for 1:00 p.m. on December 4, 2020. *Id*.; ECF No. 44 at 10. Shortly before 1:00 p.m., Lujan noticed Dizon eating lunch and informed him that the meeting could not be rescheduled as 1:00 p.m. worked for everyone attending and that he could resume his lunch after the meeting. ECF Nos. 44 at 10-11, 45 at 8. At the meeting, Lujan issued Dizon a final written warning and placed him on a sixty-day PIP. ECF Nos. 44 at 11, 45 at 8.

On December 9, 2020, Dizon submitted an internal grievance report to Vectrus complaining about Lujan's behavior at the December 4, 2020, meeting. ECF Nos. 44 at 11, 45 at 46, 48-49. Dizon asserted that Lujan violated the company's collective bargaining agreement ("CBA") by failing to follow the proper procedures for issuing discipline and by not allowing Dizon to take a lunch break. ECF Nos. 44 at 11, 45 at 43-45. Vectrus investigated and responded to Dizon's grievance, stating that his complaints against Lujan were unsubstantiated. *Id*. On December 16, 2020, while Vectrus was conducting its internal investigation, Dizon also filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), claiming that Vectrus discriminated against him because of his race and national origin. ECF Nos. 1 at 5, 44 at 11.

Between December 8, 2020, and January 19, 2021, Lujan held four separate PIP review sessions with Dizon to discuss Vectrus's expectations, Dizon's job performance, and areas where

Dizon needed to improve his performance. ECF Nos. 44 at 11, 45 at 56-57, 59, 61, 63. At the conclusion of the sixty-day period, Lujan believed that Dizon continued to exhibit poor work performance and failed to achieve the performance objectives outlined in the PIP. ECF Nos. 44 at 11-12, 45 at 9. However, rather than terminating Dizon's employment, Lujan extended the PIP by thirty days. Nos. 44 at 12, 45 at 9. At the end of the thirty-day extension, Vectrus employees met with Dizon and informed him that his employment "was ending due to unsatisfactory job performance." *Id.* Vectrus terminated Dizon's employment on April 19, 2021. *Id.*

On August 17 and 18, 2021, Dizon filed two additional Charges of Discrimination with the EEOC reiterating his allegations of race and national origin discrimination and complaining that Vectrus retaliated against him by terminating his employment. ECF No. 44 at 12. He received his right to sue letters on the charges on January 27, 2022. ECF Nos. 1-1, 1-2, 1-3. He filed suit on April 26, 2022, asserting claims for race and national origin discrimination, as well as retaliation, under Title VII. ECF No. 1 at 5.

## II.    LEGAL STANDARDS

### A.    Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Slaughter v. S. Talc. Co.*, 949 F.2d 167, 170 (5th Cir. 1991). Disputes concerning material facts are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "An issue is 'material' if it involves a fact that might affect the outcome of the suit under the governing law." *Burgos v. Sw. Bell Tel. Co.*, 20 F.3d 633, 635 (5th Cir. 1994). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of

a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

When a movant carries his initial burden, the burden then shifts to the nonmovant to show that the entry of summary judgment would be improper. *Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992). Although the nonmovant may satisfy this burden by tendering depositions, affidavits, and other competent evidence, "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden." *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Merely colorable evidence or evidence not significantly probative will not defeat a properly supported motion. *Anderson*, 477 U.S. at 249–50. Furthermore, a mere scintilla of evidence will not defeat a motion for summary judgment. *Id.* at 252; *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994).

The Court must view summary judgment evidence in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993). In addition, factual controversies are resolved in favor of the nonmovant, but only when both parties have submitted evidence of contradictory facts, thus creating an actual controversy. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). In the absence of any proof, however, the Court does not assume that the nonmovant could or would prove the necessary facts. *Id.* "When parties file cross-motions for summary judgment, [the court reviews] each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Cooley v. Hous. Auth. of Slidell*, 747 F.3d 295, 298 (5th Cir. 2014).

In making its determination on the motion, the Court looks at the full record including the pleadings, depositions, answers to interrogatories, admissions, and affidavits. Fed. R. Civ. P. 56(c);

*Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988). However, the Court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 242–43. The Court grants movant's motion only if the movant meets its burden and the nonmovant fails to make the requisite showing of a genuine issue of material fact. Fed. R. Civ. P. 56; *Duckett*, 950 F.2d at 276.

### B.    *Pro se* standard

When dealing with a *pro se* party, courts are to liberally construe the pleadings, taking all well-pleaded allegations as true. *Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). But "even a liberally-construed *pro se* . . . complaint must set forth facts giving rise to a claim on which relief may be granted." *Levitt v. Univ. of Texas at El Paso*, 847 F.2d 221, 224 (5th Cir. 1988) (citing *Bounds v. Smith*, 430 U.S. 817, 825 (1977)). Thus, a court inquires "whether within the universe of theoretically provable facts there exists a set which can support a cause of action under [the] complaint." *Covington v. Cole*, 528 F.2d 1365, 1370 (5th Cir. 1976).

### III.    ANALYSIS

### A.    The Court should Deny Dizon's Motion for Summary Judgment.

Dizon's summary judgment motion is procedurally defective and unsupported by any legal arguments or evidence. The "motion" is three pages and pleads for summary judgment based on "previously turned-in Documentary Court Exhibits." ECF No. 36 at 2. Dizon believes that these "exhibits will satisfy both standards [of] proof . . . upon which judge & jury will base their decision/adjudication on said case." *Id.*

The Court's Local Civil Rule ("LCR") 7.1(d) states that an opposed motion must be accompanied by a brief that sets forth the moving party's contentions of fact and/or law, and argument and authorities. Local Rule 7.1(i) requires that a party who relies on materials to support or oppose a motion must include the materials in an appendix, and that the appendix must be assembled as a self-contained document, separate from the motion, response, reply, and brief. LCR 56.3, 56.5, and 56.6 discuss summary judgment motions more specifically. Under Rule 56.3, a motion for summary judgment must, in addition to the contents required by Fed. R. Civ. P. 56(a), on the first page, under the heading "summary," state concisely the elements of each claim or defense as to which summary judgment is sought. Rule 56.5 informs the plaintiff that a summary judgment motion and a response must be accompanied by a brief that sets forth the argument and authorities on which the party relies in support of or opposition to a motion. And finally, Rule 56.6 requires a party who relies on materials in the record to support or oppose a motion for summary judgment to include the materials in an appendix. Dizon's Motion fails to comply with LCR 7.1(d), 7.1(i), 7.2, 56.3, 56.5, and 56.6 and is therefore improper. *Neale v. Mid-W. Truck, Inc.*, No. 5:17-CV-078-C, 2018 WL 8951187, at *2 (N.D. Tex. Aug. 28, 2018).

The Court's LCRs are not idle requirements, and failure to follow them may result in pleadings or evidence being stricken from the summary judgment record. *Graham v. Dallas Indep. Sch. Dist.*, No. 3:04-CV-2461-B, 2006 WL 2468715, at *1 (N.D. Tex. Aug. 24, 2006). While Dizon is a *pro se* plaintiff whose pleadings the Court construes liberally, he does not have a license to ignore the requirements of the Federal Rules of Civil Procedure or the Court's LCRs. *Neale*, 2018 WL 8951187 at *2.

Furthermore, even assuming that the Court did not deem it appropriate to deny Dizon's Motion for Summary Judgment based on his failure to comply with the LCRs, the outcome would

be no different. Even liberally construed, Dizon's Motion fails to show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law, which must be shown for the Court to grant him summary judgment under Federal Rule of Civil Procedure 56. Fed. R. Civ. P. 56(a). Accordingly, Judge O'Connor should deny Dizon's Motion (ECF No. 36).

> **B.    Vectrus is entitled to summary judgment on Dizon's claims of race and national origin discrimination**.

The plaintiff in a Title VII case carries the initial burden under the statute of establishing a prima facie case of racial discrimination. *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802 (1993), To establish a prima facie case, "[plaintiff] must show that he: (1) is a member of a protected class, (2) was qualified for the position at issue, (3) was discharged or suffered some adverse employment action by the employer, and (4) [ ] was treated less favorably than other similarly situated employees outside the protected group." *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007); *see also McDonnell Douglas*, 411 U.S. at 802. The burden then shifts back to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection. *Id*. If the employer articulates a legitimate, nondiscriminatory reason, the plaintiff must show either that the employer's reason is false and merely pretext for discrimination or that while the employer's reason is true, it is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic. *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 411-12 (5th Cir. 2007).

> **1.    Dizon has not established a prima facie case of race or national origin discrimination.**

Vectrus does not dispute that Dizon is a member of a protected group since he is a Filipino man. *See* ECF No. 44 at 14, 15. It also does not dispute that it terminated Dizon's employment and that termination is an adverse employment action. *Id*. However, Vectrus asserts that Dizon was not

qualified for his position (*id*. at 14) and that Mr. Sheppard and Mr. Kennemer, whom Dizon claims were similarly situated employees, were not similarly situated (*id*. at 16).

        **a.**        **Vectrus has not shown that Dizon was "unqualified" as a matter of law.**

Defendants cite to several cases from the Southern and Western Districts of Texas to establish that Dizon was "unqualified" because he was not performing his job at a level that met his employer's legitimate expectations at the time of his discharge. *Id*. at 14. However, it is not clear that the cases that Vectrus cited "accurately reflect[ ] controlling law in this circuit as to whether a plaintiff is 'qualified' for the purpose of a prime facie case." *Griffith v. Cinepolis USA, Inc*., No. 3:20-CV-3455-G-BN, 2022 WL 378843, at *5 (N.D. Tex. 2022), *rec. adopted*, 2022 WL 377980 (N.D. Tex. Feb. 8, 2022) (citing *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 350-51 (5th Cir. 2007)). In *Berquist*, the court held that the plaintiff did not have to show that his performance met the employer's expectations to establish a prima facie case. *Berquist*, 500 F.3d at 350. Although the employer submitted evidence that Berquist's employers were not pleased with his performance, the court concluded that this evidence did not prove a lack of qualifications at the prima facie stage. *Id*. at 351 (*citing Lindsey v. Prive Corp*., 987 F.2d 324, 327 (5th Cir. 1993) (holding that a district court may not determine at the summary judgment stage whether subjective criteria are bona fide)).

While the opinions of other judges of this Court are not binding as the "law of the district," the undersigned "invariably gives serious and respectful consideration to the decisions of other judges of this court on questions of law—and typically follows them because they are usually correct and because predictability in such matters is desirable." *SEC v. Cuban*, 798 F. Supp. 2d 783, 788 (N.D. Tex. 2011) (Fitzwater, S.J.); *Smith v. Buffalo Wild Wings*, No. 3:20-CV-2875-D, 2021 WL 4265849, at *3 (N.D. Tex. 2021) (same). Thus, the undersigned follows Judge Horan's

holding in *Griffith* and concludes that Dizon's negative performance reviews, are not enough to prove that Dizon was unqualified for his job as a matter of law. Thus, Vectrus has not shown that Dizon was unqualified for the job that he held for the limited purpose of alleging a prima facie case of discrimination. *Griffith*, 2022 WL 378843 at *6.

> **b.    Dizon has not shown a genuine issue of fact regarding his disparate treatment.**

To avoid summary judgment on the issue of disparate treatment, Dizon must identify evidence in the record showing that a similarly situated employee of a different race engaged in comparable conduct, but was not terminated. *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001). To meet the "similarly situated" standard, the employee's circumstances, including the conduct for which he was discharged, must be "nearly identical." *Id,*; *see Perez v. Tex. Dep't of Criminal Justice*, 395 F.3d 206, 213 (5th Cir. 2004). This "nearly identical" standard is strictly construed. *Okoye, 245 F.3d at 514-15*. "[I]n order for circumstances to be nearly identical, the misconduct itself must be nearly identical." *Bouie v. Equistar Chems. LP*, 188 F. App'x 233, 237 (5th Cir. 2006). "[C]omparably serious misconduct" is insufficient by itself to support a finding that employees are similarly situated. *Perez*, 395 F.3d at 213. Employees with different responsibilities, supervisors, work rule violations, or disciplinary records are not "nearly identical." See *id.*; *Jones v. Wal-Mart Stores Inc.*, 306 F. App'x 81, 83 (5th Cir. 2009); *Jackson v. Dallas Cnty. Juv. Prob. Dep't*, No. 3:06-cv-264-M-BH, 2007 WL 2187250, at *6 (N.D. Tex. 2007), *aff'd*, 288 F. App'x 909 (5th Cir. 2008).

Vectrus argues that neither Mr. Sheppard nor Mr. Kennemer were similar to Dizon because neither of them engaged in the same or similar misconduct as Dizon or had a comparable disciplinary history. ECF No. 44 at 16. In his affidavit, Lujan states that neither individual engaged in "unprofessional and aggressive behavior" with other Vectrus employees or customers similar

to Dizon's behavior or were reassigned from a third-party contractor's projects due to numerous complaints "of aggressive interactions." ECF No. 45 at 10. Additionally, Lujan testifies that both employees "perform[ed] their job responsibilities at satisfactory and acceptable levels" and "neither individual ha[d] exhibited performance issues requiring or warranting the issuance of a PIP or termination of their employment." *Id.* at 10-11.

Dizon responds that Mr. Shepard and Mr. Kennemer are "nearly identical" and "similarly situated" employees to him because they all had the same responsibilities, supervisor, and work rules. ECF No. 47 at 11. However, Dizon did not offer any evidence to establish that point. *See generally* ECF No. 47. Moreover, Dizon failed to offer evidence that the disciplinary records of the non-terminated employees were nearly identical to his record. *Id.*; *see also Jones*, 306 F. App'x at 83. Instead, he simply asserted that "Mr. Kennemer never received a warning or any written warning even though the first word out of his mouth is always a curse word[.]" ECF No. 47 at 11.

Rule 56 "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(e)); *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir. 1988). Dizon has not offered any affidavits, depositions, or any other evidence to prove his allegations that he Vectrus treated him differently than similarly situated employees. Thus, he has not raised a fact question regarding Vectrus's disparate treatment and has not established a prima facie case of discrimination.

        **c.**    **Dizon has not shown that the legitimate, non-discriminatory reasons that Vectrus gave for his firing were a pretext for discrimination.**

Even if Dizon had offered evidence to prove a prima facie case of race and national origin discrimination, Vectrus still is entitled to summary judgment because Dizon did not offer evidence to prove that the reasons Vectrus provided for his termination were a pretext for discrimination. Under the *McDonnell Douglas* framework, once Dizon proves a prima facie case of race or national origin discrimination, Vectrus must produce evidence tending to show that the adverse employment action was for a legitimate, nondiscriminatory reason. *McDonnell Douglas*, 411 U.S. at 802. The Supreme Court limits Vectrus's burden to prove its legitimate, non-discriminatory reason for its employment decisions to one of "production, not persuasion; it can involve no credibility assessment." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks.*, 509 U.S. 502, 509 (1993)).

In support of its Motion, Vectrus attached a number of warnings that it issued to Dizon regarding his behavior, Dizon's placement on a ninety-day PIP, and Dizon's meetings with his supervisor, to establish that Vectrus terminated Dizon for legitimate, nondiscriminatory reasons. ECF Nos. 44 at 18-19, 45 at 16-17, 21-23, 30-31, 35-38, 40, 56-57, 59, 61, 63, 65, 67, 69, 71-72, 76. Because Vectrus articulated legitimate reasons for terminating Dizon, it met its burden to respond to Dizon's prima facie case of discrimination. *Little v. Republic Ref. Co.*, 924 F.2d 93, 96 (5th Cir. 1991).

The burden then shifted back to Dizon to show that the reasons stated were merely pretexts for racial and national origin discrimination. *Id.* Dizon argued that the disciplinary records were merely a pretext by citing the derogatory comments made by a fellow employee (ECF No. 47 at

12) and by questioning the validity of Vectrus's disciplinary sanctions (*id*. at 9-12). These responses are legally insufficient.

Dizon claims that a co-worker, Monty Monson, made comments to him relating to his race and national origin. *Id*. at 12. He states that Monson asked him, "How did you get here? Did you swim?" *Id*. Monson also allegedly asked Dizon, "[w]ho died?" when he wore a suit to work, which Dizon states are "fighting words from where I come from . . . (from the Philippines)." *Id*. For comments in the workplace to provide sufficient evidence of discrimination, they must be "(1) related to the protected class of which the plaintiff is a member; (2) proximate in time to the employment action; (3) made by an individual with authority over the employment decision at issue; and (4) related to the employment decision at issue." *Manning v. Chevron Chem. Co*., *LLC*, 332 F.3d 874, 882 (5th Cir. 2003).

However, Monson was an architect who did not supervise Dizon or have authority to discipline him or terminate his employment. ECF No. 45 at 80. Moreover, Monson's comments were not related to any of the warnings that Dizon received or to the termination of his employment. Monson's comments, especially the comment asking Dizon if "he swam here," may relate to Dizon's race or national origin. However, Dizon offered no evidence to show when Monson made the comments in issue to Dizon and, thus, even if Monson were his supervisor, Dizon did not show that Monson made his comments proximate in time to Dizon's termination. *See generally* ECF Nos. 44 at 21, 45 at 79-85, 47 at 12. At most, Monson's comments were stray remarks in the workplace that are not actionable. *Krystek v. Univ. of S. Mississippi*, 164 F.3d 251, 256 (5th Cir. 1999). Dizon has not produced any evidence to show that Monson's comments were sufficient to establish pretext.

Likewise, disputing the disciplinary history that Vectrus offered is insufficient evidence to demonstrate pretext. Dizon argues that the evidence of Vectrus's disciplinary warnings were incorrect or wrong. ECF No. 47 at 6-10. He claims that his supervisors did not personally witness the alleged violations (*id*. at 6), that Vectrus does not have enough evidence that the violations occurred (*id.*), that he never made the unprofessional and aggressive comments he was accused of making (*id*. at 8), and offers other explanations for why he was justified in acting the way that he acted (*id*. at 9-10).  Dizon stated that his supervisors penalized him for issues that all the inspectors in Dizon's position experienced and that he was "intentionally singled-out . . . and reprimanded . . . about work policy and activity changes" because he was Filipino and not white. *Id*. at 4.

However, an employee's subjective belief that he suffered an adverse employment action because of discrimination, without more, is not enough to survive a summary judgment motion in the face of proof showing an adequate nondiscriminatory reason. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (citing *Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 434 (5th Cir. 1995) ("bald assertions of [ ] discrimination are inadequate to permit a finding that proscribed discrimination motivated [defendant's] actions against [plaintiff]"). Dizon has not offered any evidence to show that his negative reviews were a product of discrimination beyond his belief that the negative reviews stemmed from the fact that he was Filipino and not white. *See generally* ECF No. 47. Thus, Dizon's only attempt to show pretext were his subjective beliefs that Vectrus's disciplinary actions and reviews were incorrect. "[M]erely disputing the truth of the underlying facts" is not enough to overcome summary judgment on his discrimination claim. *Haverda v. Hays Cnty.*, 723 F.3d 586, 596 (5th Cir. 2013).

### C.    Vectrus is entitled to summary judgment on Dizon's retaliation claim.

Dizon alleges that Vectrus retaliated against him by terminating his employment after he complained of discriminatory treatment in the workplace and filed a charge of discrimination with the EEOC. ECF No. 1 at 5. The antiretaliation provision of Title VII "prohibits an employer from 'discriminat[ing] against' an employee or job applicant because that individual 'opposed any practice' made unlawful by Title VII or 'made a charge, testified, assisted, or participated in' a Title VII proceeding or investigation." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 56 (2006) (alteration in original) (quoting 42 U.S.C. § 2000e-3(a) (West 2023)); *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 576–77 (5th Cir. 2020). Where, as here, Dizon bases his retaliation claim on circumstantial evidence, the Court applies the *McDonnell Douglas* framework. *Brown*, 969 F.3d at 377; *see Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 425, 427 (5th Cir. 2000); *see also McDonnell Douglas*, 411 U.S. at 802.

Under the *McDonnell Douglas* framework, the plaintiff has the burden to prove a prima facie case of retaliation by showing that (1) he engaged in a protected activity; (2) "suffered an adverse employment action"; and (3) "a causal connection exists between the protected activity and the adverse employment action." *Byers*, 209 F.3d at 427. If the plaintiff establishes a prima facie case, then the employer has the burden of production to provide "a legitimate, non-discriminatory reason" for the adverse employment action. *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004). If the employer meets this burden, then the plaintiff has the burden to prove that the proffered reason is pretextual. *Id.* "A plaintiff may establish pretext by showing that a discriminatory motive more likely motivated her employer's decision, such as through evidence of disparate treatment, or that her employer's explanation is unworthy of credence." *Haire v. Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 363 (5th Cir. 2013).

"Ultimately, in order to survive a motion for summary judgment, a plaintiff must show 'a conflict in substantial evidence' on the question of whether the employer would not have taken the adverse employment action but for the protected activity." *Brown*, 969 F.3d at 577 (quoting *Musser v. Paul Quinn Coll.*, 944 F.3d 557, 561 (5th Cir. 2019). "Evidence is substantial if it is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Musser*, 944 F.3d at at 561–62.

### 1.    Dizon has not established a prima facie case of retaliation.

Dizon argues that Vectrus retaliated against him for filing a complaint of violation of the company's CBA and for filing a charge of discrimination with the EEOC. ECF Nos. 1 at 5, 47 at 5. "[A]n informal complaint may constitute protected activity for purposes of retaliation claims." *Amanduron v. Am. Airlines*, 416 F. App'x 421, 424 (5th Cir. 2011) (quoting *Casna v. City of Loves Park*, 574 F.3d 420, 427 (7th Cir. 2009)). However, the internal complaint must assert that the employer, either directly or indirectly, discriminated against the employee on the basis of age, sex, or other protected status. *Everett v. Cent. Mississippi, Inc. Head Start Program*, 444 F. App'x 38, 46 (5th Cir. 2011). Dizon's CBA complaint neither mentioned nor referenced any alleged discrimination. ECF No. 47 at 42-44. The complaint merely alleged that Lujan violated corporate rules by making Dizon attend a meeting during his lunch break. *Id*. Therefore, the filing of the internal CBA complaint did not constitute a "protected activity." However, Dizon did engage in a protected activity by filing an EEOC charge. *Everett*, 444 F. App'x at 45. Additionally, Dizon's termination was an adverse employment action. *Grubic v. City of Waco*, 262 F. App'x 665, 667 (5th Cir. 2008).

To determine if there is a causal link between the protected activity and the termination, the Court looks to three factors: "(1) the employee's past disciplinary record, (2) whether the

employer followed its typical policy and procedures in terminating the employee, and (3) the temporal proximity between the employee's conduct and termination." *DeHart v. Baker Hughes Oilfield Operations*, *Inc*., 214 F. App'x 437, 442 (5th Cir. 2007) (citing *Nowlin v. Resolution Trust Corp*., 33 F.3d 498, 508 (5th Cir.1994)).

Dizon's disciplinary record does not support his claim. He received warnings for "the use of language that [was] vulgar, obscene, profane, or patently offensive with customers" (ECF No. 45 at 16), for being "angry and unprofessional with the customer" (*id*. at 19), for the "numerous complaints of 'aggressive' and overreaching encounters and interaction" he had with other employees (*id*. at 21, 24, 28), for not having specific drawings and specifications with him (*id*. at 56), for improperly analyzing drawings to determine percentage completed (*id.*), and for improperly conducting the submittal process for certain logs (*id.*).

Further, upon learning of Dizon's behavior, his supervisor conducted a refresher training course with him to help correct the issues. *Id*. at 8. When the deficiencies continued, Lujan prepared a written warning and a 60-day PIP to improve Dizon's behavior. *Id*. Lujan met with Dizon to conduct PIP review sessions, and extended the plan by thirty days when it was clear that Dizon had not fully corrected his performance deficiencies. *Id*. at 9. However, when Dizon's performance did not improve, Vectrus terminated his employment "due to repeated unsatisfactory job performance." *Id*. at 10. Vectrus asserts that the evidence proves that Dizon's termination followed its typical policy and procedures in terminating an employee. ECF No. 44 at 28. Dizon has not offered any evidence to the contrary.

Finally, Dizon has not shown temporal proximity between filing the charge with the EEOC and his termination. Dizon filed his initial charge of discrimination on December 16, 2020, and was terminated approximately four months later on April 19, 2021. ECF No. 1 at 5. "[T]emporal

proximity of four months is not close enough, without additional supporting summary-judgment evidence, to establish a causal connection between the employment action and the protected conduct." *Ajao v. Bed Bath & Beyond, Inc.*, 265 F. App'x 258, 265 (5th Cir. 2008). Because Dizon has not produced any additional summary judgment evidence to show causation between the protected activity and his termination, he did not establish a fact question regarding a prima facie case of retaliation.

### 2. Dizon has not established that the reasons Vectrus offered were pretext for retaliation.

Even if Dizon had established a prima facie case of retaliation, he has not met his burden to defeat Vectrus's Motion. Once a plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for its adverse employment action. *Patrick*, 394 F.3d at 315. For the reasons stated above, Vectrus articulated legitimate reasons for terminating Dizon and met its burden. *Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 167 (5th Cir. 1999) ("[s]hould the employer provide a permissible rationale, the plaintiff then shoulders the ultimate burden of proving [pretext]").

Because Vectrus articulated legitimate reasons for his termination, Dizon had the burden to offer "substantial evidence" demonstrating that its proffered reasons were a pretext for retaliation. *Valderaz v. Lubbock Cnty. Hosp. Dist.*, 611 F. App'x 816, 823 (5th Cir. 2015). Dizon had the burden "to prove that a retaliatory motive was the but-for cause of, not merely a motivating factor behind, the decision to terminate him." *Id.* (quoting *Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*, 547 F. App'x 484, 490 (5th Cir. 2013)); *McDaniel v. Temple Indep. Sch. Dist.*, 770 F.2d 1340, 1346 (5th Cir. 1985). Moreover, "even if a plaintiff's protected conduct is a substantial element in a defendant's decision to terminate an employee, no liability for unlawful retaliation arises if the employee would have been terminated even in the absence of the protected conduct."

*Long v. Eastfield Coll.*, 88 F.3d 300, 305 (5th Cir. 1996) (citing *Jack v. Texaco Research Ctr.*, 743 F.2d 1129, 1131 (5th Cir. 1984)).

Vectrus asserts that Dizon has not established that the filing of an EEOC charge was the "but-for" cause of his termination. ECF No. 44 at 27. It argues that all Dizon has provided is his subjective belief Vectrus terminated his employment because he filed an EEOC charge, and that merely a subjective belief of retaliation is not enough to establish pretext. ECF Nos. 47 at 5, 49 at 7. Additionally, Vectrus argues that given his unsatisfactory work history, Dizon would have been terminated regardless of whether he filed a charge with the EEOC. ECF No. 44 at 27; *Long*, 88 F. 3d at 305. In support of this argument, Vectrus pointed to evidence of Dizon's unprofessional workplace conduct and consistent underperformance. ECF No. 44 at 27; *see generally* EFC No. 45.

Vectrus is correct that a subjective belief that one was retaliated against, without more, is not enough to meet the summary judgment standard for pretext. *Haverda*, 723 F.3d at 596 n.1; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (holding that the summary judgment burden is not satisfied with "some metaphysical doubt as to the material facts," by "conclusory allegations," by "unsubstantiated assertions," or by only a "scintilla" of evidence). Such evidence only implies that an employer may have made a mistake in deciding to take adverse action against an employee. *Haverda*, 723 F.3d at 596 n.1. "Because even an incorrect belief that an employee's performance is inadequate qualifies as a legitimate reason to terminate an at-will employee, a plaintiff must offer evidence to support an inference that the employer had a retaliatory motive, not just an incorrect belief." *Id*.

Dizon provided no evidence beyond his subjective belief that the filing of the EEOC charge was the "but-for" cause of his termination in response to the evidence Vectrus offered that it would

have fired Dizon regardless of the charge. Thus, Dizon has not created a fact issue regarding the issue of pretext. *Topalian v. Ehrman*, 954 F.2d 1125, 1132 (5th Cir. 1992) (holding that when the nonmovant fails to set forth specific facts, by affidavits or otherwise, to show that there is a genuine issue for trial, summary judgment is appropriate). Vectrus is entitled to summary judgment on Dizon's retaliation claim.

## IV.    CONCLUSION

Dizon is not entitled to summary judgment against Vectrus, and he has not raised a genuine issue of material fact regarding his discrimination or retaliation claim sufficient to defeat Vectrus's Motion for Summary Judgment. Therefore, Judge O'Connor should **DENY** Dizon's Motion for Summary Judgment (ECF No. 36) and **GRANT** Vectrus's Motion for Summary Judgment (ECF No. 43).

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). To be specific, an objection must identify the particular finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

**SIGNED** on April 27, 2023.

Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE